UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NICHOLAS S. SCAFFIDI,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED NISSAN, a Nevada corporation;<br>NISSAN MOTOR ACCEPTANCE<br>CORPORATION, a California corporation;<br>and DOES 1 through 20, inclusive,<br><br>        Defendants.<br>_____<br>NICHOLAS C. SCAFFIDI,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED NISSAN, a Nevada corporation;<br>NISSAN MOTOR ACCEPTANCE<br>CORPORATION, a California corporation;<br>and DOES 1 through 20, inclusive,<br><br>        Defendants.<br>_____<br>FORMAN AUTOMOTIVE, INC., dba<br>UNITED NISSAN,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>NICHOLAS S. SCAFFIDI,<br><br>        Third-Party Defendant.<br>_____ | **ORDER**<br><br>CV-S-04-1366-PMP (LRL) |

///

Presently before this Court is Defendant/ Third-Party Plaintiff United Nissan's ("Nissan") Motion for Summary Judgment of All Counts Alleged in Nicholas C. Scaffidi's Complaint or Alternatively a Motion to Exclude Spoiled Evidence (Doc. #138) filed on July 5, 2005.  Plaintiff Nicholas C. Scaffidi filed Plaintiff Nicholas C. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment of All Counts Alleged in Nicholas C. Scaffidi's Complaint or Alternatively a Motion to Exclude Spoiled Evidence and Motion to Dismiss Claims Three and Four of Nicholas C. Scaffidi's Complaint (Doc. ##92, 93) on July 25, 2005.  Nissan filed Defendant/ Third-Party Plaintiff United Nissan's Reply to Plaintiff Nicholas C. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment and Defendant/ Third-Party Plaintiff United Nissan's Motion to Strike Certain Allegations Made by Grenville Pridham in Plaintiff Nicholas C. Scaffidi's Opposition (Doc. ##105, 106) on August 4, 2005.

**I.  BACKGROUND**

This case arises out of a contract dispute regarding Defendant United Nissan's sale of a used Chevrolet Camaro ("Camaro"), manufacturer's serial number 2G1FP32KX12113873, to Nicholas S. Scaffidi.  (Three-Day Notice of Intent to Take Default [Doc. #19], Ex. A.)  On October 1, 2002, Nicholas S. Scaffidi bought the car from United Nissan ("Nissan") for $26,566.06.  (Compl.; Three-Day Notice of Intent to Take Default, Ex. A.)  Nicholas S. Scaffidi traded a 1995 Pontiac Trans Am ("Trans Am"), in exchange for a $5000 credit as part of the negotiated deal for the Camaro.  (Three-Day Notice of Intent to Take Default, Ex. A.)  Nicholas C. Scaffidi is Nicholas S. Scaffidi's father.

Plaintiffs allege that Defendants fraudulently conducted the credit application process and contract negotiation in connection with the sale of the Camaro.  (Compl. at 6-7.)  Plaintiffs allege Defendants negligently and wilfully used the social security number of Nicholas C. Scaffidi, Nicholas S. Scaffidi's father, to sell the Camaro to Nicholas S.

Scaffidi.  (Id.)

Plaintiffs and Defendants offer significantly different versions of the transaction. Nicholas S. Scaffidi alleges Nissan affirmatively misrepresented the car's actual price, and manipulated the credit process to trick him into paying more for the car.  (Compl. at 2-3.) Plaintiffs further allege that Nissan fraudulently used Nicholas C. Scaffidi's social security number to process the credit application.  (Id. at 6-7.)  Nissan contends that Nicholas S. Scaffidi fraudulently provided his father's social security number to buy the car.  (Def.'s Mot. for Summ. J. at 25-26.)

Virginia Gunn ("Gunn"), a Senior Account Representative for Defendant Nissan Motor Acceptance Corporation ("NMAC"), states in a sworn affidavit that as part of the credit application process, Nicholas S. Scaffidi listed his social security number as XXX-XX-9451.  (NMAC's Mot. for Summ. J., Ex. A, Ex. 2. at 2.)  On October 2, 2005, NMAC approved Nicholas Scaffidi for financing.  (Id. at 2-3.)  Gunn states that on October 12, 2005, Nicholas S. Scaffidi informed NMAC that the social security number provided was Nicholas C. Scaffidi's social security number, yet it was Nicholas S. Scaffidi who signed the Camaro's sales contract.  (Id. at 3.)  As of the time of the affidavit, Gunn states that Nicholas S. Scaffidi has not made any payments for the Camaro.  (Id. at 4.)  The amount due and owing on the Camaro was $29,733.94, as of June 17, 2005.  (Id. at 5.)

Immediately following the car purchase, Nissan assigned the loan to NMAC, making NMAC the creditor.  (NMAC's Mot. for Summ. J., Ex. A.)  Approximately three weeks after Nicholas S. Scaffidi signed the initial contract, Plaintiff alleges Nissan called him and offered him a lower annual percentage rate on his car.  (Id.)  Nicholas S. Scaffidi allegedly returned to Nissan and signed a second contract, which also was assigned to NMAC.  (Id.)

Shortly thereafter, Nicholas S. Scaffidi was in a major accident involving the Camaro, resulting in a "total loss" as deemed by Progressive Insurance ("Progressive").

3

1  Progressive paid $16,275 to Nicholas S. Scaffidi in reimbursement for the vehicle's loss.
2  (Def.'s Mot. for Summ. J., Ex. D.)  In communication with Progressive, Nicholas S.
3  Scaffidi indicated that he had to collect information regarding the car to send to his attorney
4  in preparation for pending litigation regarding the sale of the car.  (Def.'s Mot. for Summ.
5  J., Ex. A.)
6         After the accident, the car was brought to Bill Heard Chevrolet ("Bill Heard").
7  Bill Heard and Progressive informed Nicholas S. Scaffidi and his attorney, Grenville
8  Pridham ("Pridham"), that it would be Nicholas S. Scaffidi's responsibility to pay the
9  vehicle's salvage and storage costs.  (Id.)  There is no evidence as to Nicholas S. Scaffidi's
10 response.  Bill Heard contacted Nicholas S. Scaffidi and Pridham twice more, including to
11 notify them of a possible lien sale on the car, if it was not paid for and picked up to be put
12 in storage.  (Id.)  There is no evidence as to Nicholas S. Scaffidi's response.  The Camaro
13 was sold for scap sometime after, and is no longer available for examination of evidence.
14        This is a consolidated action.  Both Nicholas S. and Nicholas C. Scaffidi filed
15 separate Complaints on October 1, 2004.  On February 18, 2005, this Court consolidated the
16 two cases.  (Stip. and Order for Consolidation (Doc. #21).)  In his Complaint, Nicholas C.
17 Scaffidi alleges claims for liability under the Fair Credit and Reporting Act (claim 1),
18 violation of the Nevada Deceptive Trade Practices Act (claim 2), violation of the
19 Installment Sales Act (claim 3), and violation of Nevada Revised Statute 482.36395 (claim
20 4).  On July 25, 2005, Plaintiff Nicholas C. Scaffidi moved to dismiss his claims for
21 violation of the Installment Sales Act (claim 3) and violation of Nevada Revised Statute
22 482.36395 (claim 4).  (Pl. Nicholas C. Scaffidi's Brief in Opp'n to Def. United Nissan's
23 Mot. for Summ. J. of all Counts Alleged in Nicholas C. Scaffidi's Compl. or Alternatively a
24 Mot. to Exclude Spoiled Evid. and Mot. to Dismiss Claims Three and Four of Nicholas C.
25 Scaffidi's Compl. at 4.)  This Court granted Nicholas C. Scaffidi's motion.
26        On May 5, 2005, NMAC served Nissan Motor Acceptance Corporation's First

Set of Requests for Admissions to Nicholas S. Scaffidi and Nissan Motor Acceptance Corporations First Set of Requests for Admissions to Nicholas C. Scaffidi. (NMAC's Mot. for Summ. J., Ex C, D.) Neither Plaintiff responded to NMAC's request. Failure to answer a request for admissions deems the matter admitted under Federal Rule of Civil Procedure 36. Fed. R. Civ. P. 36; O'Campo v. Hardisty, 262 F.2d 621, 623 (9th Cir. 1958); see also Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981). Thus Plaintiffs admitted each statement in NMAC's request by failing to timely respond. Id.

On June 24, 2005, Plaintiffs moved to amend their admissions to NMAC's request. (Pls. Nicholas S. Scaffidi and Nicholas C. Scaffidi's Mot. for Leave to Amend its Answers to Def. Nissan Motor Acceptance Corp.'s Request for Admissions [Doc. # 68].) On July 20, 2005, the Honorable Lawrence R. Leavitt, Magistrate Judge for the United States District Court for the District of Nevada, denied Plaintiffs' motion to amend citing Federal Rules of Civil Procedure 16(b) and 36(b). (Order dated Jul. 20, 2005 [Doc. #88].) Plaintiffs moved this Court to reconsider the Magistrate's July 20, 2005 Order and this Court denied Plaintiffs' motion. (Order dated Sept. 30, 2005 [Doc. #125].)

Plaintiff Nicholas S. Scaffidi admits that he provided Nissan with his father's social security number when applying for credit to purchase the Camaro. (NMAC's Mot. for Summ. J., Ex C at 2.) Nicholas S. Scaffidi further admits that he has no valid cause of action under the Magnuson-Moss Warranty Act, the Truth in Lending Act, the Fair Credit Reporting Act, the Installment Sales Act, Nevada Revised Statute 482.26295, and the Nevada Deceptive Trade Practices Act. (Id. at 2-3.) Additionally, Nicholas S. Scaffidi admits that he has no valid cause of action for deceit, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular use, fraud or misrepresentation, conversion, breach of obligation of good faith, or under any products liability theories. (Id.) Nicholas S. Scaffidi further admits that Progressive issued a check to him, Grenville Pridham, and NMAC jointly, which Pridham deposited in his trust

1  account without Nicholas S. Scaffidi's endorsement, and then disbursed the funds to
2  Nicholas S. Scaffidi.  (Id. at 4.)  Finally, Nicholas S. Scaffidi admits that he is not entitled to
3  rescind the subject contract.  (Id. at 2.)
4      Plaintiff Nicholas C. Scaffidi admits that he provided Nissan with his social
5  security number in conjunction with the purchase of the Camaro.  (Nissan Motor
6  Acceptance Corp.'s Mot. for Summ. J., or, in the Alternative, Mot. for Partial Summ. J., Ex
7  D at 2.)  Nicholas C. Scaffidi further admits that he provided his son, Nicholas S. Scaffidi,
8  with his social security number in conjunction with the sale of the Camaro, and that
9  Nicholas S. Scaffidi used Nicholas C. Scaffidi's social security number in applying for
10 credit to purchase the Camaro.  (Id.)  Nicholas C. Scaffidi further admits that he has no
11 valid cause of action under the Fair Credit Reporting Act, the Nevada Deceptive Trade
12 Practices Act, the Installment Sales Act, and Nevada Revised Statute 482.36395.  (Id. at 2-
13 3.)  Nicholas C. Scaffidi further admits that he did not formally dispute NMAC's credit
14 reporting with any credit reporting agency.  (Id. at 3.)
15     Nissan now moves this Court to grant summary judgment as to all of Nicholas C.
16 Scaffidi's claims.  Additionally, Nissan argues that Nicholas C. Scaffidi is in breach of his
17 duty to preserve evidence, by allowing the Camaro to be destroyed.  Therefore, should this
18 Court deny Nissan's motion for summary judgment, Nissan moves this Court to make a
19 finding of spoilation and sanction Nicholas C. Scaffidi by dismissing all claims.
20 **II.    LEGAL STANDARD**
21     Summary judgment is appropriate if "the pleadings, depositions, answers to
22 interrogatories, and admissions on file, together with the affidavits, if any" demonstrate
23 "there is no genuine issue as to any material fact and . . . the moving party is entitled to a
24 judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which
25 facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All
26 justifiable inferences must be viewed in the light most favorable to the non-moving party.

County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

## III.     DISCUSSION

### A.     Fair Credit Reporting Act (claim 1)

The Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. § 1681, prohibits any person from using or obtaining a consumer report for anything other than permissible purposes. 15 U.S.C. § 1681b(f). The FCRA provides:

> (b) Adverse action based on information obtained from third parties other than consumer reporting agencies
> (1) In general.--Whenever credit for personal, family, or household purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the reasons for such adverse action received within sixty days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer.
> (2) Duties of person taking certain actions based on information provided by affiliate.--
>     (A) Duties, generally.--If a person takes an action described in subparagraph (B) with respect to a consumer, based in whole or in part on information described in subparagraph (C), the person shall--

7

       (I) notify the consumer of the action, including a statement that the consumer may obtain the information in accordance with clause (ii); and
       (ii) upon a written request from the consumer received within 60 days after transmittal of the notice required by clause (I), disclose to the consumer the nature of the information upon which the action is based by not later than 30 days after receipt of the request.

15 U.S.C. § 1681m(b). With regard to the proper use of consumer credit report, the FRCA provides:

 (a) In general
 Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
  (1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.
  (2) In accordance with the written instructions of the consumer to whom it relates.
  (3) To a person which it has reason to believe--
   (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
   (B) intends to use the information for employment purposes; or
   (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
   (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

>>(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
>>(F) otherwise has a legitimate business need for the information--
>>>(I) in connection with a business transaction that is initiated by the consumer; or
>>>(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a).

This Court has previously held that to prevail under the FCRA, plaintiff must prove three elements:

> First, Plaintiffs must demonstrate that Defendant obtained a "consumer report" from a "consumer reporting agency" under the FCRA. Second, Plaintiff must establish that the Defendant obtained their credit reports under false pretenses or knowingly without a permissible purpose. And finally, the Plaintiff must show that the Defendant acted willfully or negligently when it requested the report.

Myers v. Bennett Law Offices, 238 F. Supp. 2d 1196, 1201 (D. Nev. 2002) (internal citations omitted). "The standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports which are enumerated in 15 U.S.C. § 1681b." Hansen v. Morgan, 582 F.2d 1214, 1219 (9th Cir. 1978). With regard to whether a defendant willfully violates the FCRA, the Ninth Circuit has held, "the mens rea that is required with regard to the act that allegedly violates FCRA . . . must have been performed 'knowingly and intentionally.'" Reynolds v. Hartford Fin. Serv. Group, Inc., 426 F.3d 1020, 1037 (9th Cir. 2005) (emphasis in original). The act need not be motivated by malice or evil motive, but

1  must be intentional.  Id.  With respect to the law, the Ninth Circuit has held "that willfulness
2  for civil liability requires either knowledge or reckless disregard with respect to whether an
3  action is unlawful." Id. "Specifically, [the Ninth Circuit held] that as used in FCRA
4  'willfully' entails a 'conscious disregard' of the law, which means 'either knowing that
5  policy [or action] to be in contravention of the rights possessed by consumers pursuant to
6  the FCRA or in reckless disregard of whether the policy [or action] contravened those
7  rights.'" Id. (citing Cushman v. Trans. Union Corp., 115 F.3d 220, 227 (9th Cir. 1997).
8        Nissan moves the Court to grant summary judgment, arguing that Nicholas C.
9  Scaffidi's claim fails as a matter of law because Nicholas S. Scaffidi fraudulently provided
10 Nicholas C. Scaffidi's social security number, and therefore there is no evidence that Nissan
11 obtained the credit report under false pretenses or knowingly without a proper purpose.
12 Additionally, Nissan argues Nicholas C. Scaffidi has no claim under 15 U.S.C. § 1681m(b),
13 because there is no evidence that Nissan took an adverse action with regard to Nicholas C.
14 Scaffidi, or Nicholas C. Scaffidi's credit report.
15       Plaintiff responds that there are substantial questions of material fact regard the
16 Nissan credit transaction and therefore summary judgment is not warranted.  First, Plaintiff
17 argues that Nissan obtained Nicholas C. Scaffidi's credit report under false pretenses and
18 knowingly without a permissible purpose.  Specifically, Nicholas C. Scaffidi argues that
19 Nissan knew or should have know that the social security number Nicholas S. Scaffidi
20 provided was not his own, or that a quick comparison of the credit application with
21 Nicholas S. Scaffidi's driver's license would have revealed the social security numbers to
22 be different, and therefore Nissan was wilfully negligent.
23       Plaintiff Nicholas C. Scaffidi admits that he provided Nissan with his social
24 security number in conjunction with the purchase of the Camaro.  (Nissan Motor
25 Acceptance Corp.'s Mot. for Summ. J., or, in the Alternative, Mot. for Partial Summ. J., Ex
26 D at 2.)  Nicholas C. Scaffidi further admits that he provided his son, Nicholas S. Scaffidi,

1   with his social security number in conjunction with the sale of the Camaro, and that
2   Nicholas S. Scaffidi used Nicholas C. Scaffidi's social security number in applying for
3   credit to purchase the Camaro.  (Id.)  Nicholas C. Scaffidi further admits that he has no
4   valid cause of action under the Fair Credit Reporting Act.  (Id. at 2-3.)  Finally, Nicholas C.
5   Scaffidi further admits that he did not formally dispute NMAC's credit reporting with any
6   credit reporting agency.  (Id. at 3.)

7   Even if Nicholas C. Scaffidi did not admit that he has no valid claim under the
8   FRCA, summary judgment would still be warranted.  Viewing all evidence in favor of
9   Nicholas C. Scaffidi, the non-moving party, there is no evidence that Nissan intentionally
10  accessed Nicholas C. Scaffidi's credit without a permissible purpose.  That Nissan did
11  access the report, does not in and of itself demonstrate Nissan's intention to do so with an
12  impermissible purpose in mind.  There is no evidence in the record that Nissan
13  intentionally, or with knowledge, accessed Nicholas C. Scaffidi's credit report.
14  Furthermore, there is no evidence in the record that Nissan took an adverse action against
15  Nicholas C. Scaffidi with regard to the report.

16  Plaintiff argues Nissan should have recognized the difference between the
17  Plaintiffs, as signified by their respective middle initials, S and C.  Plaintiff argues that a
18  comparison of Nicholas S. Scaffidi's drivers license and the credit report would reveal the
19  discrepancy in individual.  This argument fails because it assumes Nissan would have
20  knowledge that it could gain only by violating the FCRA.  To compare the documents, as
21  Plaintiff suggests Defendants should have done, Nissan would have had to access the credit
22  report thus violating the FCRA.  Additionally, Nissan's failure to notice the difference
23  between the middle initials does not amount to an intentional, or willful, violation of the
24  FCRA.  For these reasons, the Court will grant Defendants' motion for summary judgment
25  with regard to Plaintiff's claim under the FCRA (claim 1).
26  ///

1    **2.     Nevada Deceptive Trade Practices Act (claim 2)**

2    In relevant part, Nevada Revised Statute 598.0915 provides:

> A person engages in a 'deceptive trade practice' if, in the course of his business or occupation, he:
> 2. Knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease.
> . . .
> 3. Knowingly makes a false representation as to affiliation, connection, association with or certification by another person.
> . . .
> 14. Fraudulently alters any contract, written estimate of repair, written statement of charges or other document in connection with the sale or lease of goods or services.

Nev. Rev. Stat. 598.0915.  Nissan moves this Court to grant summary judgment as to Nicholas C. Scaffidi's claims under the Nevada Deceptive Trade Practices Act ("NDTPA"). Nissan argues that Plaintiff's claim fails as a matter of law because at no time did Nissan make an affirmative representation to Nicholas C. Scaffidi.  Specifically, Nissan asserts that it had no contact whatsoever with Nicholas C. Scaffidi with regard to the Camaro.  Nicholas C. Scaffidi responds that genuine issues of material fact exist as to whether Nissan violated the NDTPA.  Nicholas C. Scaffidi argues that Nissan knowingly falsified the credit application for the Camaro, because it knew or should have known the social security number provided was false.

Nicholas C. Scaffidi admits that he has no valid cause of action under the NDTPA.  (Mot. Summ. J., Ex. D. at 2-3.)  Furthermore, Nicholas C. Scaffidi admits that he provided his son, Nicholas S. Scaffidi, with his social security number in conjunction with the sale of the Camaro, and that Nicholas S. Scaffidi used Nicholas C. Scaffidi's social security number in applying for credit to purchase the Camaro.  (Id. at 2.)  Nicholas C. Scaffidi further admits that he did not formally dispute NMAC's credit reporting with any credit reporting agency.  (Id. at 3.)

However, even if Nicholas C. Scaffidi did not admit that he has no valid cause of

1  action under the NDTPA, summary judgment still would be warranted.  There is no
2  evidence that at any time Nissan made a false representation to, or for that matter
3  communicated with, Nicholas C. Scaffidi in the course of its business.  Plaintiff's argument
4  that Nissan allegedly reported the incorrect social security number is without evidentiary
5  foundation, and is irrelevant.   There is no evidence in the record that Nissan intentionally
6  reported, or even intentionally accepted, an incorrect social security number.  For these
7  reasons, the Court will grant summary judgment as to Plaintiff's claim under the NDTPA
8  (claim 2).

## V.     CONCLUSION

IT IS THEREFORE ORDERED that Defendant/ Third-Party Plaintiff United Nissan's ("Nissan")  Motion for Summary Judgment of All Counts Alleged in Nicholas C. Scaffidi's Complaint or Alternatively a Motion to Exclude Spoiled Evidence (Doc. #138) is hereby GRANTED and the Clerk of Court shall enter Judgment in favor of Defendant United Nissan and against Plaintiff Nicholas C. Scaffidi.

Date:  December 28, 2005

_____
PHILIP M. PRO
Chief United States District Judge